UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ELIZABETH HALES,                )
                                ) No. CV-05-0040-MWL
          Plaintiff,            )
                                ) ORDER GRANTING PLAINTIFF'S
v.                              ) MOTION FOR SUMMARY JUDGMENT
                                )
JO ANNE B. BARNHART,            )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.            )
                                )

     BEFORE THE COURT are cross-motions for summary judgment,
noted for hearing without oral argument on December 5, 2005. (Ct.
Rec. 16, 19).  Plaintiff Elizabeth Hales ("Plaintiff") filed a
reply brief on November 14, 2005.  (Ct. Rec. 21).  Attorney Lana
C. Glenn represents Plaintiff; Special Assistant United States
Attorney Johanna Vanderlee represents the Commissioner of Social
Security ("Commissioner").   The parties have consented to proceed
before a magistrate judge.  (Ct. Rec. 3).  After reviewing the
administrative record and the briefs filed by the parties, the
Court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec.
16), **DENIES** Defendant's Motion for Summary Judgment (Ct. Rec. 19),
and **REMANDS** the case for further proceedings.

## **JURISDICTION**

On April 25, 2001, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability since July 6, 2000, due to a brain injury, injuries to her back, neck, both shoulders and right knee, depression, fatigue, memory loss, balance/coordination problems, and a frozen left shoulder. (Administrative Record ("AR") 197-200, 277).  The applications were denied initially and on reconsideration.  On March 20, 2003, Plaintiff appeared before Administrative Law Judge R. J. Payne ("ALJ").  (AR 45-52).  A supplemental hearing was held on June 5, 2003, before the ALJ, at which time testimony was taken from Plaintiff, medical expert Dr. Glen A. Almquist, and vocational expert Debra LaPoint.  (AR 53-115).  On October 9, 2003, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 26-39).  The Appeals Council denied a request for review on December 17, 2004.  (AR 10-12).  Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on February 9, 2005.  (Ct. Rec. 1).

Plaintiff previously received disability benefits from November 8, 1995, to November 30, 1998, due to emotional problems. (AR 117, 120).  Her disability claim was reviewed, because medical improvement was expected, and it was deemed that her health had improved and she was able to begin working as of September 1998. (AR 120-124).

///

///

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and Plaintiff's brief and will only be summarized here.  Plaintiff was 48 years old on the date of the ALJ's decision.  (AR 26).  She indicated that she completed high school and obtained a two years accounting degree.  (AR 81).  Plaintiff has a valid driver's license with no restrictions but had not traveled outside of Spokane since the alleged onset date.  (AR 81-82).

At the administrative hearing held on June 5, 2003, Plaintiff testified that, since the alleged onset date of July 6, 2000, she had worked between September 2002 and April 2003 taking care of an 89-year-old man with Alzheimer's disease and physical impairments.  (AR 79-80).  She indicated that she worked between six and eight hours per day, five days per week.  (AR 80).  She stated that this job ended because the patient got much more unsteady on his feet and she could no longer physically take care of him.  (AR 80).  She testified that the most serious condition preventing work would be her difficulty with memory.  (AR 82).  She also stated that she has neck and back problems, physical pain, depression and anxiety, fatigue, limited use of her wrist, and headaches.  (AR 82-83, 86, 101-104).  She testified that she is very forgetful, has a short concentration/attention span, and has episodes of angry outbursts.  (AR 106, 108).  She also had a shoplifting incident in June of 2002 for which she was diagnosed with compulsive shoplifting.  (AR 108-109).

///

///

Plaintiff testified that she can walk about one mile, stand about 20 minutes, and sit for an hour without it being a significant problem. (AR 87-88). She indicated that she could lift about five pounds with the left arm and none with the right arm. (AR 88). She stated that she has constant pain unless she is asleep. (AR 88). She describes the pain as generally an eight and a half to a nine and a 10 plus at its worst on a scale of one to 10 with 10 being the most pain. (AR 89). Plaintiff believed that she experienced 10 plus pain daily. (AR 89).

Prior to her latest job from September 2002 to April 2003, Plaintiff worked as a nurse assistant taking care of elderly persons for about 10 years. (AR 91). Prior to that, she worked as an accounting clerk and as a PBX operator for Hewlett Packard. (AR 92).

Plaintiff testified that she walks 40 minutes to an hour, three or four days per week, reads at least three hours per day, goes to the YWCA to do some light exercising in a pool a couple times per week for an hour and a half to two hours, and exercises at home, including stretching, bending, twisting, doing sit-ups, and lifting five-pound weights, three to five days per week, for an hour to an hour and a half. (AR 93-96). She stated that she does very little housework; her husband does most of the housework. (AR 95). She indicated that she attends church every Sunday and occasionally attends on Wednesdays. (AR 96-97). Plaintiff testified that she also occasionally visits a friend, spends time with her brother and sister-in-law, and spends time with her mother. (AR 97).

///

She stands 5'5" tall and weighs 134 pounds. (AR 98). She stated that she had gained about 15 pounds in the last six months. (AR 98). Plaintiff stated that she last smoked marijuana a year prior to the administrative hearing, and, at that time, she was smoking small amounts once per week. (AR 99). She believes that she had been in up to six or seven motor vehicle accidents, none of which were her fault, and two lawsuits stemming from the accidents had resulted in a settlement and one lawsuit was still pending resolution. (AR 99-100). She also indicated that she has a lawsuit pending regarding a fall at a shopping mall. (AR 101).

Medical expert Glen A. Almquist, M.D., and vocational expert Debra Lapoint also testified at the administrative hearing held on June 5, 2003. (AR 57-78, 110-113).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

///

///

Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past. If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). ///

At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572

(9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence
is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d
1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.
*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989);
*Desrosiers v. Secretary of Health and Human Services*, 846 F.2d
573, 576 (9th Cir. 1988).  Substantial evidence "means such
evidence as a reasonable mind might accept as adequate to support
a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)
(citations omitted).  "[S]uch inferences and conclusions as the
[Commissioner] may reasonably draw from the evidence" will also be
upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
On review, the Court considers the record as a whole, not just the
evidence supporting the decision of the Commissioner.  *Weetman v.
Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v.
Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to
resolve conflicts in evidence.  *Richardson,* 402 U.S. at 400.  If
evidence supports more than one rational interpretation, the Court
may not substitute its judgment for that of the Commissioner.
*Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579
(9th Cir. 1984).  Nevertheless, a decision supported by
substantial evidence will still be set aside if the proper legal
standards were not applied in weighing the evidence and making the
decision.  *Brawner v. Secretary of Health and Human Services*, 839
F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial
evidence to support the administrative findings, or if there is
conflicting evidence that will support a finding of either
///

disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that Plaintiff has engaged in substantial gainful activity since her alleged onset date, July 6, 2000. (AR 27). At step two, the ALJ determined that Plaintiff has the severe impairments of shoulder post-traumatic arthropathy, chronic pain syndrome, status post extensor carpi ulnaris ("ECU") tendon reconstruction, and status post anterior cruciate ligament ("ACL") tightening, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 35). The ALJ specifically noted that the evidence of record did not support limitations stemming from any mental impairment. (AR 35).

The ALJ concluded that Plaintiff has the RFC to perform a wide range of heavy work activity, or work involving lifting up to 100 pounds with more frequent lifting of 50 pounds or more, with no exertional limitations. (AR 37).

At step four of the sequential evaluation process, the ALJ found that Plaintiff was able to perform her past relevant work as a nurse's assistant, home attendant, and telephone operator. (AR 37-38). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 38-39).

///

///

///

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law.  Specifically, she argues that:

1.    Medical expert, Glen Almquist, M.D., did not thoroughly review the record; therefore, the ALJ's reliance on his testimony is erroneous;

2.    The ALJ erred by giving more weight to the opinion of a Dr. Almquist, a nonexamining physician, than to other physicians of record;

3.    The substantial weight of the record evidence does not support the ALJ's finding that Plaintiff can perform heavy work activity;

4.    The ALJ's opinion that Plaintiff is not credible is erroneous and not properly supported; and

5.    The ALJ erred by finding that Plaintiff does not have a severe mental impairment.

This Court must uphold the Commissioner's determination that Plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A.  Credibility**

Plaintiff argues that the ALJ's opinion that Plaintiff is not credible is erroneous and not properly supported.  (Ct. Rec. 17, pp. 23-26).  The Commissioner contends that the ALJ appropriately evaluated the record and provided legally sufficient rationale for finding Plaintiff's testimony not fully credible.  (Ct. Rec. 20, pp. 17-20).

1    It is the province of the ALJ to make credibility

2 determinations. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.

3 1995). However, the ALJ's findings must be supported by specific

4 cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir.

5 1990). Once the claimant produces medical evidence of an

6 underlying impairment, the ALJ may not discredit her testimony as

7 to the severity of an impairment because it is unsupported by

8 medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.

9 1998) (citation omitted). Absent affirmative evidence of

10 malingering, the ALJ's reasons for rejecting the claimant's

11 testimony must be "clear and convincing." *Lester v. Chater*, 81

12 F.3d 821, 834 (9th Cir. 1995).

13    On December 28, 2001, Frank Rosekrans, Ph.D., conducted a

14 psychological evaluation of Plaintiff. (AR 658-663). Dr.

15 Rosekrans diagnosed malingering, conversion disorder, with motor

16 and sensory symptoms or deficit, and with seizures and convulsions

17 and was not able to objectively determine a Global Assessment of

18 Functioning ("GAF") score because of Plaintiff's malingering. (AR

19 662). Dr. Rosekrans concurred completely with the assessment of

20 Dr. Toews,[1] who concluded that Plaintiff was deliberately

21 simulating. (AR 663). Dr. Rosekrans indicated that Plaintiff

22 "was clearly malingering and feigning memory deficit," and that he

23 "diagnosed malingering with great confidence." (AR 663). He

24 indicated that Plaintiff had a "strong incentive to malinger, for

25 secondary gain, from lawsuits and from her claim for benefits."

26 _____

27    [1]Jay M. Toews, Ed.D, evaluated Plaintiff on May 11, 1998, and diagnosed her with malingering, noting that she was deliberately non-compliant, gave very rapid "don't know" responses and made significant errors on even the

28 simplest of tests. (AR 392-396). He noted that Plaintiff's "non-compliance is so blatant that no other diagnosis is possible at this point." (AR 396).

(AR 663).  Dr. Rosekrans indicated that he could "conclude with certainty that she had feigned memory and cognitive deficit in this evaluation, which of course does cast doubt on all of her self-reported symptoms."  (AR 663).

Accordingly, there is affirmative evidence of malingering, and the ALJ was thus not required to give "clear and convincing" reasons for rejecting Plaintiff's testimony in this case.  *Lester*, 81 F.3d at 834.

The ALJ determined that Plaintiff's allegations of total disability were not supported by the evidence of record.  (AR 36-37).  In support of this finding, the ALJ indicated as follows: (1) Plaintiff's testimony of daily activities is inconsistent with her complaints of disabling symptoms and limitations; (2) Plaintiff's appearance and demeanor while testifying at the hearing was unpersuasive; (3) Paxil has been noted as an excellent anti-depressant which Plaintiff has been taking for four years and which has been described by Plaintiff as producing a quick response and excellent results; (4) it has been noted that Plaintiff's chronic pain has responded well to the use of Neurontin; (5) Plaintiff has not taken any narcotic based pain relieving medications in spite of the allegation of disabling pain; she only takes over-the-counter pain relievers; (6) there are various reports of malingering; (7) Plaintiff's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date, yet the impairments did not prevent her from working at that time; and (8) there is evidence that claimant stopped working for reasons not related to the allegedly disabling impairments.  (AR 36-37).

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). The ALJ notes that Plaintiff's chronic pain has responded well to the use of Neurontin, Paxil produced excellent results for her depression, and Plaintiff has not taken narcotic based pain relieving medications in spite of the allegation of disabling pain. (AR 36-37). Moreover, the ALJ indicated that Plaintiff's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date, yet the impairments did not prevent her from working at that time. (AR 37).

With regard to her daily activities, it is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair*, 885 F.2d at 603. The ALJ indicated that Plaintiff described daily activities which were not limited to the extent one would expect given the complaints of disabling symptoms and limitations. (AR 36). As noted by the ALJ, Plaintiff testified that she reads about three hours a day (yet, she alleged poor attention span) and walks 40 to 50 minutes at a time, three or four days a week, goes to the YWCA to exercise, and regularly attends church (yet, she alleges constant pain and an inability to perform household chores). (AR 36). In addition, Plaintiff testified that she exercises at home, including stretching, bending, twisting, doing sit-ups, and lifting five-pound weights, three to five days per week, for an hour to an hour and a half. (AR 94-95). The ALJ properly found that such
///

activities were inconsistent with Plaintiff's alleged limitations
and thus detracted from her credibility.

Furthermore, as noted by the Commissioner (Ct. Rec. 20, pp.
18-20), additional factors weighing against Plaintiff's
credibility include the fact that she worked at substantial
gainful activity levels during the alleged period of disability,
the record reflects that secondary gain, from lawsuits and her
claim for benefits, is a factor to be considered as detracting
from her credibility, and evidence of Plaintiff's malingering is
present throughout the record.

The ALJ is responsible for reviewing the evidence and
resolving conflicts or ambiguities in testimony. *Magallanes v.
Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the
trier of fact, not this Court, to resolve conflicts in evidence.
*Richardson,* 402 U.S. at 400.  The Court has a limited role in
determining whether the ALJ's decision is supported by substantial
evidence and may not substitute its own judgment for that of the
ALJ even if it might justifiably have reached a different result
upon de novo review.  42 U.S.C. § 405(g).

After reviewing the record, the undersigned judicial officer
finds that the reasons provided by the ALJ for discounting
Plaintiff's subjective complaints are sufficient and supported by
substantial evidence in the record.  In fact, the Court finds the
reasons provided by the ALJ for finding Plaintiff's allegations
not entirely credible are clear and convincing.  Accordingly, the
ALJ did not err by concluding that Plaintiff's allegations of
total disability were not fully credible in this case.  (AR 37).
///

**B.  Reliance on Medical Expert**

     Plaintiff contends that the ALJ erred by giving significant weight to the opinions of a nonexamining medical advisor, Glen Almquist, M.D.  (Ct. Rec. 17, pp. 21-23).  She argues that the substantial weight of the record evidence does not support the ALJ's finding, which is consistent with the opinions of Dr. Almquist, that Plaintiff can perform heavy work activity.  (*Id.*) She also asserts that Dr. Almquist did not thoroughly review the record; therefore, the ALJ's reliance on his testimony is erroneous.  (*Id.*)  The Commissioner responds that the ALJ appropriately considered and addressed the medical evidence of record, including the findings of Dr. Almquist, and properly found that Plaintiff has the physical RFC to perform heavy exertion work.  (Ct. Rec. 20, pp. 5-21).  The undersigned does not agree.

     In a disability proceeding, the courts distinguish among the opinions of three types of physicians:  treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians).  *Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition.  *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician.  *Lester*, 81 F.3d at 830.  However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a nonexamining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

In reaching his physical RFC determination, the ALJ accorded weight to the opinions of nonexamining medical expert, Dr. Almquist. (AR 35, 57-78). The ALJ determined that Plaintiff has the severe impairments of shoulder post-traumatic arthropathy, chronic pain syndrome, status post ECU tendon reconstruction, and status post ACL tightening, but that these impairments do not prevent her from performing a wide range of heavy work activity (or working involving lifting up to 100 pounds with more frequent lifting of 50 or more pounds). (AR 35, 37). The ALJ's severe ///

impairment findings and RFC determination mirror those assessed by
Dr. Almquist.  (AR 57-58).

Dr. Almquist reviewed the record and testified at the
administrative hearing held on June 5, 2003.  (AR 57-78).  Dr.
Almquist reviewed the record and testified that Plaintiff reported
six motor vehicular accidents in a seven-year period, yet there
was no history of an ambulance bringing her to an emergency room,
nor any history of police reports that he was aware of stemming
from the accidents.  (AR 58).  Dr. Almquist noted that cervical,
thoracic and lumbosacral x-rays following the accidents revealed
no acute problems with no mention of any serious degenerative
problems.  (AR 62-63, 65).  His conclusion as to Plaintiff's
physical ability was that she had no restrictions and therefore
could perform heavy exertion work.  (AR 71).

Dr. Almquist explicitly noted that he did not look through
every exhibit in the record, but merely went through the record
and reviewed all documentation regarding Plaintiff's physical
complaints, skipping reports dealing with her mental health.  (AR
68-70).  With regard to physical therapy reports, Dr. Almquist
indicated that he goes by what the doctor has to say about the
physical therapy reports, not with what the therapist directly
reports.  (AR 71-72, 75-76).

Contrary to Plaintiff's argument, a review of the transcript
reveals that Dr. Almquist thoroughly and completely reviewed the
record as it pertains to Plaintiff's physical limitations.
Plaintiff's counsel even thanked Dr. Almquist at the time of the
hearing for his "thorough review of the record," and the ALJ
informed Dr. Almquist that he certainly earned his money by his

thorough review of the voluminous record (over 1200 pages) and testimony.  (AR 78).

Nevertheless, as noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830.  Dr. Almquist's finding that Plaintiff can perform heavy exertion level work is not supported by substantial record evidence in this case.

Kenneth D. Sawyer, M.D., the medical expert called at the first administrative hearing held on March 20, 2003 (AR 45-52), completed a medical source statement of ability to do work-related activities (physical) on March 19, 2003.  (AR 1042-1045).  Dr. Sawyer indicated that Plaintiff could frequently lift and/or carry 10 pounds and occasionally lift and or carry 20 pounds, but was not limited in standing and/or walking, sitting, or pushing and pulling.  (AR 1042-1043).  Dr. Sawyer noted that Plaintiff was not otherwise limited, other than she should only occasionally climb ladders due to some ACL laxity in her right knee.  (AR 1043).  Therefore, Dr. Sawyer, the first medical expert, opined that Plaintiff is limited to light exertion level work.  (AR 1042).

Plaintiff's treating physician, Alex R. Verhoogen, M.D., treated Plaintiff from at least August of 2001 until April of 2002 (AR 799-808, 918-936, 1106-1107, 1168).  Dr. Verhoogen noted on August 21, 2001 that Plaintiff was being seen for increased right shoulder and right knee pain.  (AR 799).  He recommended conservative treatment of both the knee and shoulder due to the relatively low levels of symptoms.  (AR 799-800).  On February 12,

2002, Dr. Verhoogen noted that Plaintiff presented after twisting her knee during a fall at a shopping mall. (AR 800). He noted that there was swelling in her knee, she definitely has laxity of her ACL, and it appeared she had re-ruptured her ACL. (AR 800). However, an MRI revealed that she had not ruptured her ACL and may have just stretched it out upon her fall. (AR 801-802). On April 3, 2002, Dr. Verhoogen performed arthroscopic surgery on her right knee, tightening a loose ACL. (AR 806-808, 920, 925). Six weeks following surgery, Plaintiff reported that her knee was much more stable, but she still complained of weakness. (AR 928).

On July 9, 2002, Plaintiff presented to Dr. Verhoogen complaining of right wrist pain also resulting from the January 16, 2001 shopping mall fall. (AR 1106). He noted that there was no question that something snaps very profoundly as she pronates and supinates her wrist back and forth and believed there was a chance that she had a cartilage tear and therefore she should be seen by a hand surgeon. (1106-1107).

On July 31, 2002 hand surgeon Landon T. Horne, M.D., saw Plaintiff and recommended medication (Vioxx) and physical therapy for her wrist pain. (AR 1088). On September 26, 2002, Dr. Horne injected her wrist, but, on October 29, 2002, Plaintiff reported little improvement of the wrist pain following the injections and the taking of Vioxx. (AR 1092-1093). On November 22, 2002, Dr. Horne performed a right extensor carpi ulnaris pulley reconstruction. (AR 1051-1055). On December 5, 2002, it was noted that Plaintiff would be in a long arm cast for a total of six weeks. (AR 1094). The cast was removed on January 8, 2003. (AR 1096). On January 29, 2003, Plaintiff reported wrist and

elbow pain, and, on February 18, 2003, she presented with
stiffness and soreness.  (AR 1097).  On February 25, 2003, Dr.
Horne wrote a letter opining that Plaintiff would benefit from
occupational therapy services.  (AR 1098).

Merle Janes, M.D., treated Plaintiff from at least December
of 1994 until July of 2002.  (AR 678-798, 937-961).  Dr. Janes
examined Plaintiff on February 23, 2001, for upper and lower back
pain, neck pain, and left shoulder pain.  (AR 733).  Dr. Janes
diagnosed cervical sprain/strain, thoracic sprain/strain,
lumbosacral sprain/strain, left shoulder post-traumatic
arthropathy, disturbed sleep, chronic pain and depression.  (AR
733).  Dr. Janes examined Plaintiff on March 26, 2001, following
her fourth motor vehicle accident since 1998.  (AR 740).  Dr.
Janes noted that Plaintiff had stronger headaches, low back and
neck pain, dizziness, difficulty explaining/remembering/thinking,
right knee pain, right calf spasm, left shoulder tightening, and
pain in her right arm and both hips.  (AR 740).  Dr. Janes
diagnosed cervical sprain/strain, thoracic sprain/strain,
lumbosacral sprain/strain, left shoulder post-traumatic
arthropathy, right knee sprain, disturbed sleep, chronic pain,
depression, and concern about traumatic brain injury.  (AR 749).

On April 25, 2001, May 17, 2001, August 29, 2001, September
19, 2001, and November 28, 2001, Plaintiff was seen by Dr. Janes
for a follow up to her March 12, 2001 motor vehicle accident.  (AR
752, 755, 758, 762, 940).  On each occasion, Dr. Janes diagnosed
cervical sprain/strain, thoracic sprain/strain, lumbosacral
sprain/strain, bilateral shoulder post-traumatic arthropathy,
right knee sprain, disturbed sleep, chronic pain, depression, and

concern about traumatic brain injury.  (AR 752, 755, 758, 762, 940).  Dr. Janes noted on November 29, 2001, that Plaintiff continues to slowly improve, but could use ongoing help, or in-house assistance, as her husband was out of town frequently and for extended periods.  (AR 943).

On March 25, 2002, Dr. Janes diagnosed multi-site pain generators from several motor vehicle accidents, chronic, severe pain, depression, hypertension and right knee injury.  (AR 956). It was noted that Plaintiff planned to have knee repair surgery in two weeks.  (AR 956).  On July 2, 2002, Dr. Janes indicated that the right knee arthroscopic surgery had been completed and was apparently successful.  (AR 959).  Dr. Janes also noted that Plaintiff was to have a right wrist arthrogram the following week and that she should follow up for additional back and shoulder pain treatment.  (AR 959).

On March 22, 2001, William R. Loomis, D.O., examined Plaintiff.  (AR 860-862).  Dr. Loomis noted significant contractures on the left side of the body (yet, most of the pain complaints were on the ride side), significant contractures on the suboccipital musculature, and a lumbopelvic strain with restricted mobility of the L5/S1 joint and both sacroiliac joints.  (AR 862). Dr. Loomis examined and treated Plaintiff on March 27, 2001, but after she missed appointments, Dr. Loomis severed treatment with her on April 3, 2001.  (AR 863-864).

On April 9, 2002, a state agency reviewing physician, George Rodkey, M.D., completed a Residual Functional Capacity Assessment of Plaintiff.  (AR 838-845).  Dr. Rodkey determined that Plaintiff ///

should be limited to lifting and/or carrying 20 pounds
occasionally and 10 pounds frequently, limited to only
occasionally climbing, balancing, stooping, kneeling, crouching,
and crawling, limited in overhead reaching, and limited from
concentrated exposure to hazards.  (AR 839-842).

The Court agrees with Plaintiff's assertion that the above
medical reports would lead a reasonable person to conclude that
Plaintiff could not perform heavy work activity.  (Ct. Rec. 17, p.
23).  Dr. Almquist, a nonexamining physician, is the only medical
professional of record to find that Plaintiff could perform work
at such an exertion level.  The substantial weight of the record
evidence does not support the ALJ's finding, based on the opinions
of Dr. Almquist, that Plaintiff can perform heavy work activity.
However, Plaintiff's physical RFC is an administrative finding,
dispositive of the case, which is reserved to the Commissioner,
and, by delegation of authority, to the ALJ.  SSR 96-5p.  It is
thus the responsibility of the ALJ, not this Court, to make a RFC
determination.  Accordingly, Plaintiff's physical RFC must be
redetermined, on remand, taking into consideration the opinions of
the medical professionals noted above, as well as any additional
or supplemental evidence relevant to Plaintiff's claim for
disability benefits.[2]  Plaintiff's new physical RFC assessment
should be presented to a vocational expert, at a new hearing, in
///

---

[2]The undersigned finds it important to note that a review of the record
reveals affirmative evidence of malingering and that Plaintiff worked at
substantial gainful activity levels during the alleged period of disability.
(*see*, *supra*).  Therefore, just because the current RFC finding has been found
erroneous in this case, it does not dictate that Plaintiff is disabled for
purposes of federal law.

order to determine if she is capable of performing her past

relevant work as a home attendant or any other work existing in

sufficient numbers in the national economy.

### C.  Severe Mental Impairment

Plaintiff also makes a cursory argument that the ALJ erred by

concluding that Plaintiff does not have a severe mental

impairment.  (Ct. Rec. 17, p. 27).  Plaintiff asserts that giving

credit to Doctors Sexton, Moulten, and Beaty demonstrates that she

has a mental disability, because each doctor found that Plaintiff

is markedly limited in maintaining attention and concentration,

completing a normal work day or work week and performing at a

consistent pace.  (Ct. Rec. 17, p. 27).  The Commissioner responds

that all of the medical records for the period at issue support

the ALJ's finding that Plaintiff did not have a severe mental

impairment during that period.  (Ct. Rec. 20, pp. 5-21).

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c),

provide that an impairment is severe if it significantly limits

one's ability to perform basic work activities.  An impairment is

considered non-severe if it "does not significantly limit your

physical or mental ability to do basic work activities."  20

C.F.R. §§ 404.1521, 416.921.  Plaintiff has the burden of proving

that she has a severe impairment.  42 U.S.C. § 423(d)(1)(A); 20

C.F.R. § 416.912.  In order to meet this burden, Plaintiff must

furnish medical and other evidence that shows that she is

disabled.  20 C.F.R. § 416.912(a).  In the absence of objective

evidence to verify the existence of an impairment, the ALJ must

reject the alleged impairment at step two of the sequential

evaluation process.  SSR 96-4p.

With respect to the January 14, 1997 mental RFC assessment of Edward Beaty, Ph.D., (AR 365-379), the Commissioner correctly asserts that his assessed limitations predate the relevant time period in this case (Ct. Rec. 20, p. 14).  The relevant time period is from July 2000 (the alleged onset date) to October of 2003.  Plaintiff received disability benefits from November 8, 1995 until November 30 1998 due to emotional problems (AR 117, 120); therefore, it is reasonable that Plaintiff would have marked limitations, as assessed by Dr. Beaty, during that time period. However, for purposes of Plaintiff's current application for DIB, Dr. Beaty's assessment is inconsequential.

However, since it has been determined that a remand is necessary in this case for a reassessment of Plaintiff's physical RFC (*see*, *supra*), the undersigned finds that a reevaluation of Plaintiff's mental limitations and functioning, on remand, ensures that Plaintiff's claim is fully addressed.  Accordingly, on remand, the ALJ shall additionally assess Plaintiff's mental RFC in light of the medical reports of Robert Sexton, M.D., and Ron Doyen, Ph.D. (AR 1214-1228) as well as the report of Dr. Moulton (AR 869-870).  The opinions of these medical professionals were not expressly rejected by the ALJ, and each of their opinions discusses restrictions stemming from mental impairments assessed during the relevant time period.  (AR 869-870, 1214-1228).

## **CONCLUSION**

Plaintiff argues that the ALJ's errors should result in this Court reversing the ALJ's decision and awarding benefits.  (Ct. Rec. 17).  The Court has the discretion to remand the case for additional evidence and finding or to award benefits.  *Smolen v.*

*Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  The Court may award
benefits if the record is fully developed and further
administrative proceedings would serve no useful purpose.  *Id.*
Remand is appropriate when additional administrative proceedings
could remedy defects.  *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th
Cir. 1989).  In this case, further development is necessary to
remedy defects and for a proper determination to be made.

On remand, the ALJ shall reassess Plaintiff's physical and
mental RFC, taking into consideration the opinions of the
physicians noted in Section B above, the medical reports of Drs.
Sexton, Doyen, and Moulton, as well as any additional or
supplemental evidence relevant to Plaintiff's claim for disability
benefits.  The ALJ shall elicit medical expert testimony at the
new administrative hearing to assist the ALJ in making the
physical and mental RFC determinations.  Plaintiff's new RFC
assessment should be presented to a vocational expert, at a new
hearing, in order to determine if she is capable of performing her
past relevant work as a home attendant or any other work existing
in sufficient numbers in the national economy.  Accordingly,

**IT IS ORDERED**:

1.  Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is
**GRANTED in part** and the above captioned matter is **REMANDED** for
additional proceedings as outlined above and pursuant to sentence
four of 42 U.S.C. § 405(g).

2.  Defendant's Motion for Summary Judgment (**Ct. Rec. 19**) is
**DENIED**.

///

///

3.   Judgment shall be entered for **PLAINTIFF**.  An application for attorney fees may be filed by separate motion.

4.   The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file.

**DATED** this ___27th___ day of January, 2006.

                         s/Michael W. Leavitt
                         MICHAEL W. LEAVITT
                    UNITED STATES MAGISTRATE JUDGE